### FAIN v. SECURITY STATE BANK & TRUST CO. (No. 1733.)

(Court of Civil Appeals of Texas. Amarillo. Dec. 22, 1920. Rehearing Denied Jan. 12, 1921.)

Husband and wife ⬦276(4)—Administrator may recover from creditor bank appropriating proceeds deposited after decease and before administration.

Where an intestate died insolvent, and his surviving widow, without qualifying as administrator of the community estate, carried on the business, and a creditor bank appropriated funds from the business deposited by the widow's clerk, knowing that the estate was subject to administration, the subsequently appointed administrator could recover such funds whether the widow had consented to the appropriation or not.

Appeal from District Court, Lubbock County; W. R. Spencer, Judge.

Suit by E. C. Fain, administrator of the estate of B. P. Hopkins, deceased, against the Security State Bank & Trust Company. Judgment for defendant, and plaintiff appeals. Reversed and rendered.

M. Fulton, of Lubbock, for appellant.
R. A. Sowder, of Lubbock, for appellee.

BOYCE, J. B. P. Hopkins died intestate on October 28, 1918. He was in the drug business at Lubbock, Tex., and upon his death it was found that his estate was insolvent. He did a banking business with the Security State Bank & Trust Company and owed the bank a considerable amount of money. After his death his widow continued to operate the store, employing a Mr. Lowery, who formerly clerked in the drug store, to conduct the business. The proceeds of sales made from the stock were deposited in the said bank to the credit of the account of B. P. Hopkins. During the latter part of December, 1918, the bank appropriated the sum of $772.70 out of this account and applied the same to the payment of a past-due note executed by the said B. P. Hopkins to the bank. It does not appear that the widow knew anything about this. The clerk, Lowery, was informed by the bank of its intention to apply the funds to the credit of the account in payment of its debt, but he did not consent or give the bank any authority to make the appropriation, but told it that he "had no objection if they could get by with it." On April 25, 1919, E. C. Fain was appointed administrator of the estate, on application filed January 4, 1919, and thereafter brought this suit against the said bank to recover the monies so appropriated. The court rendered judgment for the bank, and the administrator has appealed.

If the survivor had qualified and was administering the community estate under the statute, she would have been bound to pay the debts in the order of their classification, but there is a conflict of authority as to whether she could make preferences in favor of creditors of the same class. Evans v. Taylor, 60 Tex. 425; Clifford v. Campbell, 65 Tex. 247; Leatherwood v. Arnold, 66 Tex. 414, 1 S. W. 173; Citizens' National Bank v. Jones, 22 Tex. Civ. App. 45, 54 S. W. 405; Speer's Law of Marital Rights in Texas, par. 607. Judge Speer, in the citation referred to, notes the conflict in the decision of the cases cited, but comes to the conclusion that the rule permitting a preference "cannot be defended in the light of later decisions defining the nature of such qualified survivor's holding," and that "the better rule is that the debts should be paid as in ordinary administrations." Qualification, under the statute, enlarges the power of the survivor, and we would have no doubt that, if Mrs. Hopkins could not grant a preference if she had been duly qualified, she would be without such power without qualification. We need not decide as to whether the authorities sustain the conclusion reached by Judge Speer, but base our decision of the case on other grounds.

In the case of Latham v. Dawson, 40 Tex. Civ. App. 219, 89 S. W. 315, the surviving widow sold certain community property to

a creditor in satisfaction of his debt, and was later appointed administratrix and brought suit to recover the property. It was held that the power of the survivor to sell community property to pay debts could not be exercised to the subversion of rights of creditors and other persons, as they might be determined in a subsequent administration of the property of the estate, and that, as it was not shown that the purchasing creditor had any right in the property superior to other creditors, and that there was other property sufficient to pay other creditors and the allowances which the probate court might make out of the estate, the administratrix could recover the property that had been so sold. This case was followed by the case of Rotan Grocery Co. v. Pate, 169 S. W. 378, where the estate was insolvent and all the property conveyed by the widow to one of the creditors for sale and pro rata distribution among the creditors of the estate. In this case it was held: First, that the survivor had no power to make an assignment delegating her powers of winding up the estate; and, second, that if the transaction be regarded as a sale, yet "such sale would be nullified by the appointment of an administratrix who would eo instanti become entitled to possession of such property for the purposes of administration." These authorities refer to the cases of Matula v. Freytag, 101 Tex. 357, 107 S. W. 536, which in turn refers to the case of Mitchell v. De Witt, 20 Tex. 294, in support of the proposition that the survivor without qualification has no power to make any disposition of the estate that will affect the rights of an administrator, subsequently appointed, to recover possession of such property and administer it under the laws governing the administration of estates generally. It is not necessary for us to go to the extent of holding that every sale made by a survivor prior to the taking out of administration on the estate might be set aside in every case, and we do not so hold; but where the rights of no one but the creditor are involved, and his rights were acquired with knowledge that facts existed which authorized an administration of the estate, it is not inequitable to hold that his rights are subordinate to the administration which may be subsequently taken out. And we think the authorities just referred to require this holding.

If this is a correct conclusion, it follows, we think, that the administrator had the right to recover the proceeds of sales deposited in the appellee bank after the death of B. P. Hopkins. We take it that the administrator could, if he saw fit, approve the sales and follow the proceeds thereof, as representing the property of the estate. The bank had no lien or special right in them which would authorize it to appropriate this property of the estate to the payment of its debt.

Padgell v. Bank, 141 Mo. App. 374, 125 S. W. 219. Under this view of the matter, the administrator could recover, even if the wife had directed the application of the money to the payment of the bank's debt. But we do not think the facts warrant the conclusion that she paid the debt or authorized preference. Under the evidence, the act of appropriation was that of the bank and no one else. The clerk's attitude toward it, "that he had no objection if they could get by with it," simply threw the whole responsibility for the act on the bank and was an approval subject to any legal test of the right of the bank to do this thing. The facts do not show that the clerk had any authority from the survivor to consent to the appropriation, and, even if she could herself make preferences, she probably would not have authority to delegate any general power in such matters to any one else. Rotan Grocery Co. v. Pate, supra.

For these reasons we think the administrator entitled to recover, and the judgment of the trial court will be reversed, and here rendered in favor of appellant.

---

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes